**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: <u>1:23-cv-22398</u>**

_____

GOLDEN EXOTICS, LLC

v.

UNITED STATES OF AMERICA,

U.S. DEPARTMENT OF HOMELAND

SECURITY

_____

**<u>EXPEDITED MOTION FOR RETURN OF SEIZED PROPERTY</u>**
**<u>PURSUANT TO RULE 41(G) OF THE FEDERAL RULES OF CRIMINAL ROCEDURE</u>**
**<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Golden Exotics LLC, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure ("Rule 41(g)"), seeks the return of a vehicle, namely a 2018 Bugatti Chiron, seized by the United States in or near Miami, FL on or about June 2, 2023. The vehicle was seized pursuant to a Warrant To Seize Property Subject to Forfeiture ("Warrant to Seize") issued by U.S. Magistrate Judge Bruce J. McGiverin from the United States District Court for the District of Puerto Rico on or about May 31, 2023.  There is no factual basis for the seizure of the vehicle and it is therefore illegal, unconstitutional, and unwarranted.

We request an expedited hearing of this motion because, as detailed below, timely return of the seized vehicle is essential as it is unique and as it is instrumental to the commercial success of a boxing event scheduled for September 24, 2023 in Bogotá, Colombia where Golden Exotics

1

LLC's sole member, Mr. Kevin Thobias will compete.  In particular, the event, which will be livestreamed around the world, depends upon the presence of Golden Exotics LLC's 2018 Bugatti Chiron, an exceptionally rare vehicle which has been essential to publicization of the event, and which will attract the attention of automobile enthusiasts both in Colombia and around the world.  Therefore, to timely arrange for shipping of the vehicle to Colombia, a ruling is necessary by August 1, 2023.

This Court should issue an order directing the prompt return of the seized property.  In support of this motion, Golden Exotics LLC submits the following:

## I.     STATEMENT OF FACTS

1. The seized vehicle is a 2018 Bugatti Chiron (the "Bugatti") with a purchase value of $3.25 million, which was designed and developed in Germany by Bugatti Engineering GmbH and manufactured in Molsheim, France, by French automobile manufacturer Bugatti Automobiles S.A.S.  The company only manufactured 500 Bugatti Chirons, and it is considered to be the one of the most expensive cars ever made.

2. The Bugatti (Vehicle Identification Number (VIN) VF9SP3V34JM795083) is registered to Golden Exotics LLC, a Montana company whose sole member is Mr. Kevin Thobias ("Mr. Thobias").

3. Mr. Thobias, an Air Force Veteran, is an American serial entrepreneur who purchased the Bugatti as a business investment on or about October 2021. The exclusive vehicle is part of a comprehensive plan to augment his influence on social media, including but not limited to his Instagram following.  It is widely known that a large following on Instagram can be enormously profitable as it can be monetized in various ways.[1]

---

[1]       *See* for example Pierre-Yann Dolbec, Andrew Smith, and Trang Hoang (2021) ,"How Do Online Influencers Monetize Their Audiences?", in NA - Advances in Consumer Research Volume 49, eds. Tonya Williams Bradford, Anat Keinan, and Matthew Matthew Thomson, Duluth, MN : Association for Consumer Research, Pages: 356-357; Digital Marketing Institute (2023), "The Cost of Social Media Advertising: Where's the Value?", at https://digitalmarketinginstitute.com/blog/the-cost-of-social-media-advertising-wheres-the-value

4.  As part of this plan, Mr. Thobias decided to ship the Bugatti to Colombia for a limited period of time not exceeding six months so that the car could be used there at promotional events, including at a boxing event scheduled for September 24, 2023 at the Movistar Arena in Bogotá, Colombia, one of the country's premier indoor sports arenas with a capacity of up to 14,000 spectators.  The match was announced by "WESTCOL," a very famous Colombian influencer.  Mr. Thobias himself is scheduled to fight at this boxing event, which will also be livestreamed to hundreds of thousands and viewed by millions of people in Colombia and all over the world.  The plan was, and still is, that Mr. Thobias would drive the Bugatti into the arena where he would exit from the Bugatti in front of the hundreds of thousands of spectators/viewers providing an ideal platform for the car.

5.  Mr. Thobias also scheduled a number of other events in the city of Medellin, Colombia, which would have included street closures and meetings with VIPs and high-ranking city officials.  A YouTube-Channel and a podcast accompanying the events were also part of the plan.  The preparation for these events is well under way and Mr. Thobias has already invested tens of thousands of dollars in preparation of these various events.  The goal was to use the attention garnered in Colombia to create a larger footprint all over Latin America and eventually in the United States and across the world.

6.  All these planned events must occur within a limited time period because the car needs to be returned to the United States within six months of its arrival in Colombia.  The time limitation is due to insurance restrictions and because there is no mechanic in all of Colombia who is licensed to provide qualified maintenance services for a 2018 Bugatti Chiron.

---

[last visited 6/22/2023]; Fritz Colcol (2020), "The Importance Of Social Currency", at https://www.forbes.com/sites/theyec/2020/03/03/the-importance-of-social-currency/?sh=ef6c1581678c [last visited 6/22/2023]; McKinsey & Company (2022), "Social commerce: The future of how consumers interact with brands", at https://www.mckinsey.com/capabilities/growth-marketing-and-sales/our-insights/social-commerce-the-future-of-how-consumers-interact-with-brands [last visited 6/22/2023]

7. Upon publicizing his plan on social media, major Colombian media started covering Mr. Thobias and his Bugatti, additionally increasing the interest in the planned events with the Bugatti. Approximately 20 such articles were published by reputable news organizations in Colombia.[2] Further, Mr. Thobias gained over one hundred thousand (100,000) followers on Instagram.

8. Effectively all Colombian news organizations that covered the Bugatti's arrival introduced readers to Mr. Thobias in their articles and broadcasts, publicizing the vehicle within the context of its owner's brand. Colombian media's response to the vehicle's announced arrival underline Mr. Thobias' claim that the Bugatti is a business asset capable of substantially accelerating the owner's prominence and growth on social media.

9. The transportation of the Bugatti from Miami to Colombia was originally scheduled on or about April 19, 2023 but got delayed and rescheduled for early May 2023.

10. The Bugatti was already in custody of the shipping company when on or about May 10, 2023, Homeland Security Investigation Special Agent Ricardo Rivera e-mailed Mr. Thobias informing him that his agency had asked Customs and Border Protection ("CBP") to detain the vehicle "for inspection".

11. Special Agent Rivera further stated in that email:

---

[2]      *See* for example an article in Bloomberg Linea published on April 17, 2023 at https://www.bloomberglinea.com/latinoamerica/colombia/quien-es-y-que-hace-kevin-thobias-el-hombre-con-el-primer-bugatti-chiron-de-colombia/ [last visited 6/20/2023]; article published on Motor.Com on April 12, 2023 a https://www.motor.com.co/industria/Este-Bugatti-Chiron-esta-en-camino-a-Colombia-20230412-0010.html [last visited 6/22/2023]; article published RCN Radio, April 16, 2023, at https://www.rcnradio.com/colombia/antioquia/llega-el-primer-bugatti-a-colombia-quien-es-el-dueno-del-carro-de-20-mil [last visited 6/22/2023]. Other examples of media coverage include an article by *Motor* that references an Instagram post with tens-of-thousands of views related to the vehicle's arrival, and an article by *Fuel Car Magazine* that references the post of a high-profile social media account captioned '*confirmando pronto veremos esta bestia rodando por Colombia!?*' - 'confirming that we'll see this beast riding around Colombia soon!?,' accompanied by a video of the vehicle.

> This is a routine matter that allows for a due diligence inquiry of merchandise exported from the United States. Once the inspection is complete, assuming the merchandise is not being exported contrary to any applicable law, the merchandise will be released.
> This process can typically take several weeks.
> We would appreciate the opportunity to expedite this inspection as well, in order to do so, we would like to schedule an interview with the <u>vehicle owner</u> where we can go over some questions we have after reviewing the documents already provided to CBP. [Emphasis in original]

12. On or about May 11, 2023, the Department of Homeland Security ("DHS") served Mr. Thobias with a Detention Notice that stated the following reason for the detention: "Further inspection of vehicle and Ownership documentation". No other reason for the detention or subsequent seizure was ever provided to Mr. Thobias or his counsel.

13. Between May 11 and May 17, 2023, Mr. Thobias provided Special Agent Ricardo Rivera with documentation evidencing his ownership of the Bugatti.

14. At the request of Special Agent Rivera, Mr. Thobias travelled on very short notice from Colombia to Miami to meet with Special Agent Rivera on May 17, 2023.  It was Mr. Thobias' understanding that the purpose of this meeting was to clarify the ownership of the Bugatti. Special Agent Rivera, however, used the meeting to interrogate Mr. Thobias regarding matters completely unrelated to the Bugatti.

15. Before the meeting on or about May 17, 2023, Mr. Thobias was assured by Special Agent Rivera that the car would be released if the appropriate ownership documentation was provided.  However, even after ownership documentation was provided, the car remained in DHS detention.

16. On or about May 31, 2023, U.S. Magistrate Judge Bruce J. McGiverin issued a seizure warrant, based on a law enforcement affidavit, which to this date has been kept under seal.  The warrant was executed on or about June 2, 2023.[3]

17. The detention and subsequent seizure of the Bugatti has brought Mr. Thobias' commercial plans with the car to an abrupt halt.  As mentioned before, the events planned around the Bugatti in Colombia aimed to increase Mr. Thobias' visibility and in particular to increase the number of his followers on Instagram.

18. Mr. Thobias has currently 609,000 followers on Instagram and since he announced that he would bring the Bugatti to Colombia he gained about 100,000 new followers, mainly from Colombia.  In fact, Mr. Thobias' exotic-car-related posts, including those featuring the 2018 Bugatti Chiron, have high levels of viewer engagement, garnering hundreds of thousands of views per post.

19. Events planned around the arrival of the car in Colombia had to be cancelled, which caused irreparable harm to Mr. Thobias' business interests and to his credibility with his social media followers.  Additional events planned for later in the year may need to be cancelled as well unless the Bugatti will be released in due time.

20. The cancellation of these promotional events is not the only kind of irreparable harm that Mr. Thobias is facing: A 2018 Bugatti Chiron requires extremely sophisticated maintenance and proper storage in order to preserve its value.  The regular maintenance of the Bugatti costs approximately thirty thousand dollars ($30,000.00 USD) per year.

21. It is very questionable whether the U.S. government is in a position to provide such high-end maintenance and storage.  Such maintenance requires qualified technicians who are trained and certified by the manufacturer.  Each and every day the car is not properly

---

[3]    *See* Exhibits 1a and 1b – Warrant and Execution of Warrant.

attended to may significantly diminish its value.  For that reason alone, it should be returned immediately to its rightful owner.

22. The vehicle's seizure and the subsequent cancellation of associated promotional events also harm Mr. Thobias' future opportunities for investment in Colombian companies. Mr. Thobias has previously framed his rise to fame in Colombia as part of a long-term plan to invest into Colombian companies over the next 3 years, contingent on his continued online growth.  The vehicle's seizure, which limits Mr. Thobias' potential online growth, impedes this business motive.

23. The U.S. Government has so far not shared any evidence that would justify the seizure of the car. There is no indication that the car is evidence material to an investigation, contraband, illegally possessed, or that it was used or is intended to be used to commit a crime.  Furthermore, the Bugatti was purchased with a line of credit that Mr. Thobias received from JP Morgan, backed by his then existing stock portfolio.  Sometime after he purchased the vehicle, Mr. Thobias sold real estate and used a portion of those proceeds to pay down the line of credit.

24. Therefore, the government has no reasonable basis for the continued retention of the Bugatti and it should be immediately returned to its rightful owner Golden Exotics LLC pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. The detention and seizure of the car are arbitrary and in violation of Mr. Thobias' rights under the U.S. Constitution.

## II.    THIS COURT HAS EQUITY JURISDICTION AND VENUE IS PROPER

25. Both jurisdiction and venue are explicitly addressed in Rule 41(g), which states that "[A] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return," which clearly constitutes jurisdiction for federal courts. It is further well-established law that a party can bring a Rule 41(g) motion for the return of property prior to the filing of any criminal proceedings. *Richey v. Smith*,

515 F.2d 1239, 1243,; 75-2 U.S. Tax Cas. (CCH) P 9617, 36 A.F.T.R.2d 75-5489 (5th Cir. 1975); *U.S. v. Martinson* , 809 F.2d 1364, 1366 (9th Cir. 1987); *Pieper v. U.S*., 604 F.2d 1131, 1133, 16 Env't. Rep. Cas. (BNA) 2177 (8th Cir. 1979) (decided under Rule 41(e) [Rule 41(g) is formally known as Rule 41(e)]).

26. A Rule 41(g) motion filed pre-indictment or post-verdict is treated as a civil action in equity. See *United States v. Dean*, 80 F.3d 1535, 1542 n.6 (11th Cir. 2005) ("Federal courts have developed the doctrine of 'equitable' or 'anomalous' jurisdiction to enable them to take jurisdiction over property in order to adjudicate 'actions for the return of unlawfully seized property even though no indictment has been returned and no criminal prosecution is yet in existence.") (citation omitted); see also *United States v. Howell,* 425 F.3d 971 , 974 (11th Cir. 2005) (a Rule 41(g) motion "is a motion in equity, in which courts will determine all the equitable considerations in order to make a fair and just decision"); *United States v. Castro*, 883 F.2d 1018 , 1020 (11th Cir. 1989) ("Rule 41(e), Fed. R. Crim. P., is 'a crystallization of a principle of equity jurisdiction.") (citation omitted); *In re Southeastern Equipment Co. Search Warrant*, 746 F. Supp. 1563, 1572 (S.D. Ga. 1990) ("A motion under 41(e)… has always been treated as one invoking the equity jurisdiction of the Court.

27. Venue is determined in the second sentence of Rule 41(g) as "the district where the property was seized."  According to the Warrant to Seize, at the time of seizure the Bugatti was located in Miami, FL and in the Southern District of Florida. Venue in this court is therefore proper.

III.   **THE MOVANT IS THE RIGHTFUL OWNER OF THE SEIZED PROPERTY; THE SEIZED PROPERY IS NEITHER CONTRABAND, NOR IS IT USED AS EVIDENCE, NOR HAS IT OR WILL IT BE USED TO COMMIT A CRIME**

28. A movant in a Rule 41(g) Motion has to establish (a) lawful ownership of the seized property; (b) that the property is not contraband, (c) and that the property is not or not

anymore used by the government as evidence. *United States v. Shalash*, No. Civ. A. 05-56- KSF, 2005 WL 1593937, at \*1 (E.D. Ky. 2005) (citing *Ferreira v. United States*, 354 F. Supp. 2d 406 (S.D.N.Y. 2005)).  Additionally, property which has been used or may be used to further criminal activity need not be returned. *Shirazi v. United States*, 2002 WL 3 1055964 (N.D. Ill. 2002).  The Eleventh Circuit has basically confirmed this concept and stated that "the movant must demonstrate that he has a possessory interest in the seized property and that he has 'clean hands' with respect to that property." *United States v. Howell*, 425 F.3d 971, 973 (11th Cir.2005).

29.  The Bugatti is owned by Golden Exotics, LLC as evidenced by State of Montana Certificate of Title No. AA5819656 issued on or about 12/22/2021.[4]  Mr. Kevin Thobias is the sole member of Golden Exotics, LLC as evidenced by Articles of Organization filed on 6/28/2019 with the Secretary of State for the State of Montana.[5]  Golden Exotics, LLC as the legal owner and Mr. Thobias as the ultimate owner have therefore a legitimate and proper ownership interest in the Bugatti.

30.  Contraband is defined as goods that "are illegal to trade, carry, produce, or otherwise have in one's possession."[6]  A properly licensed car does clearly not match this definition.  Thus, the Bugatti is not contraband.

31.  The U.S. Government has so far not made any claims that the Bugatti was seized as material evidence in a criminal investigation.

32.  The Bugatti has not been used for criminal activity and there is absolutely no indication nor evidence that the Bugatti will be used for such activity in the future.

---

[4]      *See* Exhibit 2 – Title.
[5]      *See* Exhibit 3 – LLC Information.
[6]      Cornell Law School Legal Information Institute at
https://www.law.cornell.edu/wex/contraband [last visited 6/21/2023]

## IV.   THIS COURT SHOULD EXCERSIZE EQUITY JURISDICTION AND RETURN THE BUGATTI TO PREVENT MANIFEST INJUSTICE

33. The Eleventh Circuit has adopted clear guidelines that district courts use to consider whether to exercise equity jurisdiction to return property:

> "(1) [W]hether the government agents seized the property in callous disregard for the constitutional rights of the petitioner;
>
> (2) whether the petitioner has an individual interest in and need for the property he seeks to have returned;
>
> (3) whether the petitioner would be irreparably injured by denial of the return of the property; and
>
> (4) whether the petitioner has an adequate remedy at law."
>
> *United States v. Quezada*, 439 Fed. Appx. 824, 827 (11th Cir. 2011) (quoting *Matter of Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00)*, 901 F.2d 1540, 1545 (11th Cir. 1990)). *See Bennett v. United States*, 12-61499-CIV, 2013 WL 3821625, at *14-15 (S.D. Fla. July 23, 2013) (applying the four-factor test to a Rule 41(g) motion for return of property).

### *The Detention and Seizure of the Bugatti constitutes a callous disregard for the Movant's constitutional ownership rights*

34. The callous disregard for Mr. Thobias' constitutional ownership rights is obvious. Mr. Thobias is not only temporarily deprived of possession of the Bugatti, but given the government's lack of qualification to properly maintain this car with a $3.25 million price tag the value of his property may be diminished by the day.  The government has not provided qualified assurances that it will provide the required maintenance of this car. Given the enormous costs of maintenance and because of the special skills required, it is highly unlikely that the government will be able to properly maintain the Bugatti.

35. Further, the mere fact that the Bugatti was seized based on a warrant that on its face may meet minimal requirements under the constitution does not necessarily mean that the seizure did not constitute "callous disregard." *See, e.g., Mr. Lucky Messenger Service, Inc., v. United States,* 587 F.2d 15, *17 (7th Cir.1978) (rejecting the government's claim that since the property was seized pursuant to a valid search warrant it therefore was not made in callous disregard for movant's constitutional rights and stating instead that the government's withholding of $65,000 for seventeen months without bringing charges "may well involve callous disregard for constitutional rights").

36. Moreover, there is reason to believe that the government's explanation for the detention of the Bugatti that preceded the seizure ("Further inspection of vehicle and Ownership documentation") was incorrect and deceptive and aimed to hurt Mr. Thobias economically.  The detention of the Bugatti was used to lure Mr. Thobias to meet with DHS Special Agents to discuss its ownership.   However, he was interrogated regarding issues completely unrelated to the Bugatti and without given the opportunity to seek advice from counsel.

### *The petitioner has an individual interest in and need for the property he seeks to have returned.*

37. The Bugatti is, as previously stated, a business investment by Mr. Thobias that has the potential to generate very significant income.  However, Mr. Thobias has only a short window of time where he can use the Bugatti to generate interest and to increase his following on social media.  The interest in the Bugatti that Mr. Thobias created with his elaborate media campaign in Colombia may vanish in short order as the attention of his audience will move on to other attractions.  It is therefore evident that Mr. Thobias has an individual interest in and a need for the Bugatti returned to him.

### *Mr. Thobias would be irreparably injured by denial of the return of the property.*

38. There should not be any doubt that the retention of the Bugatti would cause irreparable harm to Mr. Thobias for the following reasons: (1) Mr. Thobias would not be able to

further his business operations after investing three million two hundred and fifty thousand dollars ($3,250,000 USD) in the Bugatti itself; (2) Mr. Thobias would lose credibility with his followers on social media, which would damage his ability to increase his exposure and growth on social media; and (3) the Bugatti will diminish in value if the government does not properly maintain and store the vehicle.

### *There is no other remedy at law.*

39. There is no other remedy at law for Golden Exotics LLC or Mr. Thobias to have their rightful property returned.

## V. THE SEIZURE OF THE PROPERTY IS UNWARRANTED AND UNREASONABLE

40. The government has so far failed to state any proper reason for seizing the Bugatti. This Court should therefore determine whether the seizure of the Bugatti is warranted and reasonable or whether there are other appropriate actions that could be taken to secure proper government interests without jeopardizing Mr. Thobias' business interests, which require taking the Bugatti to Colombia for a limited period of time not exceeding six months.

41. It is unreasonable and unwarranted for the government to deprive an owner of property that is unrelated to any potential criminal activity that otherwise has no evidentiary value. *See, e.g.*, *United States v. White*, No. 12-2833- MJ, 2013 WL 141147, at *3 (S.D. Fla. 2013) (ordering property return including a rare coin collection when property had no reasonable evidentiary value); *Shalash*, 2005 WL 1593937, at *3 (ordering return of items seized pursuant to search warrant that were "not related in any way to the allegations of criminal activity").

42. If the government's legal interests can be addressed even if the property is returned, continued retention of the property would be unreasonable. It is well accepted that seized property may be returned to its owner if an alternative is sufficient to address the

government's legal interests.  *See* Advisory Committee notes to the 1989 Amendment of Rule 41(e). Thus, if these interests can be satisfied in another manner continued retention of the Bugatti would be unreasonable. Under present law, the spirit of Rule 41(g) "is one of compromise." *See Ramsden v. U.S.*, 2 F.3d 322 (9th Cir. 1993) (decided under Rule 41(e)).

43. The Bugatti has clearly no evidentiary value and is not material to any known government investigation.  In the intervening time since the seizure, the property is not being maintained properly and is deteriorating in value.  Further, it is preventing and hampering the efforts of Golden Exotics LLC and of Mr. Thobias to conduct its business operations.  Absent a demonstration of a valid reason for its continued deprivation, the government should be ordered to return the property immediately "to the rightful owner." *Henderson v. United States*, 575 U.S. 622, 135 S. Ct. 1780, 1784 (2015).

## VI.    CONCLUSION

44. Notwithstanding any legitimate reasons, if any, for the initial seizure, there is no reasonable basis for the continued retention of the Bugatti.  The Bugatti is not contraband, it is not property from the fruit of criminal activity and is not being held as evidence.

45. Given that there is no evident connection between the Bugatti and any government investigation, this court should order the government to disclose its interest in the Bugatti. If there is a legitimate interest of the government in seizing certain assets owned by Golden Exotics, LLC and/or Mr. Thobias they should be provided with the opportunity to provide a reasonable substitution for the Bugatti, which in turn should be released to its rightful owners.

46. The government's seizure and continued deprivation of the Bugatti is causing irreparable injury to both Golden Exotics, LLC and Mr. Thobias. Mr. Thobias has a pressing need

for the Bugatti as otherwise his economic interests are being adversely impacted every day.

47. Practically speaking, Mr. Thobias can only export the Bugatti to Colombia for a limited period, and the Bugatti will shortly return to the US once it has served its legitimate business purpose.

48. For all these reasons, the Bugatti needs to be returned to its rightful owners immediately.

WHEREFORE, based on the foregoing facts and circumstances, Movant Golden Exotics, LLC respectfully requests that this Court enter an order requiring the return of the vehicle seized on or about June 2, 2023. Movant further seeks an immediate hearing on this motion, and any further relief this Court deems just and equitable, including costs and attorneys' fees pursuant to 28 U.S.C. §2412.

Respectfully submitted,

/s/ Jonathan Edderai
Jonathan Edderai
Florida Bar No. 124350
Wolffers Cohen & Edderai, LLP
1132 Kane Concourse, Suite 205
Bay Harbor Islands, FL 33154
jonathan@wolfferscohen.com
Office: (786) 505-0431
Fax: (786) 544-2619

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been sent to all counsel of record by certified mail, return receipt requested, facsimile or by messenger on this 28th day of June, 2023.

/s/ Jonathan Edderai
Jonathan Edderai
Florida Bar No. 124350
Wolffers Cohen & Edderai, LLP
1132 Kane Concourse, Suite 205
Bay Harbor Islands, FL 33154
jonathan@wolfferscohen.com
Office: (786) 505-0431
Fax: (786) 544-2619